# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

CSX TRANSPORTATION, INC.,
and DALE R. F. GOODMAN,
SUCCESSOR TRUSTEE of the
BANKRUPTCY ESTATE OF
BRIAN K. LEGGETT,

     **Plaintiffs,**

 v.            1:07-cv-1152-WSD

BRIAN K. LEGGETT; TRACY T.
LEGGETT; CHRIS A. LEGGETT;
B&G PROPERTY HOLDINGS,
LLC; LEGGETT, LEGGETT &
TOWLER, LLC; LEGGETT
HOLDINGS, LLC;
PROMOTIONAL GROUP
SERVICES, INC.; SEG, INC. a/k/a
and/or d/b/a SOUTHERN
EXCAVATION GROUP a/k/a/
and/or d/b/a SOUTHEASTERN
EXCAVATION GROUP a/k/a
and/or d/b/a SOUTHERN
ENTERPRISE GROUP, INC.;
CAPITAL FINANCIAL GROUP,
LLC; L&M VENTURES, LLC; and
TRACY LEGGETT d/b/a REAL
ESTATE MANAGEMENT GROUP,

     **Defendants.**

## **OPINION AND ORDER**

This matter is before the Court on Plaintiff CSX Transportation, Inc.'s unopposed Motion for Summary Judgment against Tracy Leggett [102].

## I.     BACKGROUND FACTS

### A.     Prior Actions and Brian Leggett's Insolvency

Defendant Brian Leggett was the principal corporate officer and sole director and shareholder of Defendant B&L Financial Services, Inc. ("B&L"). Brian Leggett's wife is Tracy Leggett. From 1997 through August 2002, B&L provided debt collection services to Plaintiff CSX ("Plaintiff" or "CSX"). During this period, B&L collected funds on behalf of CSX, but failed to remit them to CSX.

On August 7, 2002, CSX commenced an action against B&L, Brian Leggett, and Tracy Leggett to recover the funds B&L failed to remit to CSX (the "2002 Case"). On June 14, 2005, B&L consented to entry of a final judgment against it in the amount of $3,158,035.81. On October 28, 2005, Brian Leggett consented to the entry of a final judgment against him in the amount of $1,930,058.93. As of the date of this Opinion and Order, Brian Leggett has substantially failed to satisfy the final judgment entered against him in the 2002 Case.

On April 25, 2005, while the 2002 Case was pending, Brian Leggett filed a voluntary Chapter 13 petition in the U.S. Bankruptcy Court for his district. On May 13, 2005, Brian Leggett filed a Statement of Financial Affairs with the Bankruptcy Court where he admitted his debts were greater than his assets. On August 19, 2005, the Bankruptcy Court dismissed Brian Leggett's case because he did not qualify for Chapter 13 relief. On October 9, 2007, Brian Leggett filed a second petition in his district, seeking relief under Chapter 7. In filing the petition, Brian Leggett again represented that his debts ($2,036,845.31) were greater than his assets ($144,552.00). On June 10, 2010, Brian Leggett was granted a discharge by the Bankruptcy Court pursuant to 11 U.S.C. § 727.

B. <u>Alleged Fraudulent Conveyances</u>

1. *Transfer of Liquid Assets to Tracy Leggett*

After 2000, Brian Leggett has transferred various real and personal property to his wife without consideration for the transfers. At all times relevant to this action, Tracy Leggett had two banking accounts at Linsco/Private Ledger (the "LPL Accounts"), a financial institution with an office in Atlanta, Georgia. While Tracy Leggett was the sole holder of the LPL Accounts, Brian Leggett exclusively

managed them.  Tracy Leggett was unaware that the LPL Accounts even existed.[1]

Between January 1, 2006, and August 31, 2006, Brian Leggett transferred $118,759.76 into the LPL Accounts.  Tracy Leggett was unaware these transfers occurred and she did not provide Brian Leggett, or any other person, goods, services, or any other consideration for these funds.

### 2.  *Transfer of the Fieldview Properties to Tracy Leggett*

On October 27, 2005 Brian Leggett was the sole owner of two parcels of property on Fieldview Drive in Douglasville, Georgia (collectively the "Fieldview Properties").  The first parcel, located at 5110 Fieldview, was the residence of Brian and Tracy Leggett.  As of October 28, 2005, Brian Leggett owed two mortgage loans on this property totaling $348,047.36.  The second parcel, located at 5107 Fieldview, was an undeveloped, one acre, residential lot.[2]

---

[1] The record reflects that this was not abnormal.  Tracy Leggett admits that her only means of acquiring assets since 2000 has been allowing Brian Leggett to "use her name" without questioning him about the uses.  Tracy Leggett testified under oath that: "if [Brian Leggett] says I need you to sign this, I'm going – I mean I just do it.  It's not something I – there's a lot of things we had to change [after the Final Judgment was entered against Brian Leggett], put my name, get credit in mine.  Brian will never be able to get credit again so I don't sit there and rake him over the coals about it.  I just sign it."  At all relevant times to this action, Brian Leggett has exercised control over Tracy Leggett's ownership of Tracy Leggett's assets, many of which Tracy Leggett did not know existed.

[2] No mortgage loans appear to be attached to this parcel.

On October 28, 2005, the same day the final judgment in the 2002 Case was entered against Brian Leggett, Chris Leggett, Brian Leggett's brother, "purchased" the Fieldview Properties for $435,000.  At the closing of this sale, Chris Leggett paid 20% of the sale price in cash and entered into a $348,000 mortgage loan secured by the 5110 Fieldview parcel.  With the proceeds from the sale of the Fieldview Properties, Brian Leggett paid off the $348,047.36 on the two mortgage loans he owed on the 5110 Fieldview property, and he received $74,951.65 in cash for the sale.

Following sale of the Fieldview Properties, Brian Leggett immediately began refunding to Chris Leggett the "out of pocket costs" Chris Leggett paid in connection with his purchase of the properties.  In a series of payments from November 2005 through January 2006, Brian Leggett refunded Chris Leggett nearly the entire down payment and closing costs, plus interest, that Chris Leggett tendered to purchase the Fieldview Properties.  Brian Leggett also assumed Chris Leggett's mortgage payments for 5110 Fieldview.

On January 24, 2006, after entry of the final judgment in the 2002 Case, Chris Leggett, at the request of Brian and Tracy Leggett, executed two quitclaim deeds conveying the Fieldview Properties to Tracy Leggett.  The mortgage loan secured by 5110 Fieldview remained in Chris Leggett's name.  On November 29,

2006, Tracy Leggett refinanced 5110 Fieldview and received $353,600, using the property to secure the refinancing mortgage. The proceeds from the refinancing were used to pay off the mortgage on 5110 Fieldview that was in Chris Leggett's name. Through this series of transactions title to the Fieldview Properties was transferred from Brian Leggett, against who a large judgment had been entered, to his wife, who did not have a judgment entered against her. During this period, Brian and Tracy Leggett resided, uninterrupted, in their 5110 Fieldview home.

### 3. *Transfer of the Hunnicutt Road Property to Tracy Leggett*

On October 27, 2005, Brian Leggett was the sole owner of real property located at 530 Hunnicutt Road in Mableton, Georgia (the "Hunnicutt Property"). The secured loans on this property were in the amount of $92,424.

On January 3, 2006, Brian Leggett conveyed the Hunnicutt Property to Tracy Leggett by quitclaim deed. Brian Leggett conveyed the property to Tracy Leggett a second time on March 1, 2007, because the first quitclaim deed contained a number of typographical error errors. On or about the time of the second quitclaim transaction, the value of the Hunnicutt Property was approximately $135,000. Tracy Leggett was not aware of the conveyance of the

Hunnicutt Property to her and she did not know that she owned this property.[3]  She did not pay any consideration for the quitclaim conveyance of this property to her.

      4.  *Transfer of the Macedin Drive Property to Tracy Leggett*

On September 22, 2005, Brian Leggett transferred to Tracy Leggett, again by quitclaim deed, a parcel of residential rental property he owned on Macedin Drive in Douglasville, Georgia (the "Macedin Property").  Brian Leggett did not tell his wife of the quitclaim transaction and she did not know she owned this property after the quitclaim deed was executed and filed, and did not know there was a loan in the amount of $105,000 that was secured by the property.  On January 27, 2006, Tracy Leggett executed a deed to convey the property to Jason and Jennifer Watson.  The Watsons paid $129,500 for the Macedin Property.  Following the transfer of 5740 to the Watsons, a Cancellation of Deed to Secure Debt was filed with the Douglas County Clerk which noted that Brian Leggett had paid the mortgage loan in full.

  C.  <u>Procedural History</u>

On May 21, 2007, Plaintiff filed this action to satisfy the final judgment entered against Brian Leggett in the 2002 Case and to seek redress for Brian Leggett's alleged fraudulent conveyances of his personal and real property to

---

[3]  The rental income from this property was paid directly to L&M Vetures, an enterprise over which Brian Leggett exercises complete control.

Tracy Leggett to avoid satisfaction of the judgment entered against him. The Amended Complaint alleges, among other things, separate causes of action for each alleged fraudulent conveyance committed by Brian Leggett.[4] The Amended Complaint also seeks to hold Tracy Leggett liable for these fraudulent conveyances.

On June 17, 2010, Plaintiff filed its Motion for Summary Judgment (the "Motion"), requesting that a judgment in the amount of $272,288.40 be entered against Tracy Leggett as the transferee of the fraudulent conveyances alleged in the Complaint. The requested judgment amount is derived by adding: (1) $86,952.64 – the value of the Fieldview Properties at the time of the alleged fraudulent transfer;[5] (2) $42,576 – the value of the Hunnicutt Property at the time of the alleged fraudulent transfer; (3) $24,500 – the value of the Macedin Property at the time of the alleged fraudulent transfer; (4) $118,795.76 – the value of the funds transferred by Brian Leggett into the LPL Accounts. Tracy Leggett did not respond to the Motion, and it is deemed unopposed. LR 7.1B NDGa.

---

[4] Count I is a claim for fraudulent conveyance of 5110 Fieldview. Count II is a claim for fraudulent conveyance of 5107 Fieldview. Count III is a claim for fraudulent conveyance of the Hunnicutt Property. Count IV is a claim for fraudulent conveyance of the Macedin Property. Count XVI is a claim for fraudulent conveyance of the assets held in the LPL Accounts.

[5] This figure is calculated by subtracting $348,047.36, the amount of the first and second mortgages then on 5110 Fieldview, from $435,000, the amount paid for the sale of the Fieldview Properties.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). The party opposing summary judgment has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment." King Ocean Central America, S.A. v. Angel Food and Fruit Co., 1995 WL 819141, at *2 (S.D. Fla. Oct. 12, 1995) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Fitzpatrick V. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).).  A district court cannot grant summary judgment merely because the motion is unopposed.  U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004).  The court must rather consider the merits of the motion and review all evidentiary materials submitted in support thereof to ensure that the motion is well-supported and that there is no genuine issue of material fact.  Id. at 1101-02.  A party's failure to provide a response to the movant's statement of undisputed facts shall cause the Court to deem each of the movant's facts as admitted.  LR 56.1(B)(2)(a)(2) NDGa.

    B.    Analysis

Plaintiff argues that the transfers of funds or property described above constitute constructive fraud under Georgia's Uniform Fraudulent Transfers Act ("UFTA"), O.C.G.A. § 18-2-70, *et seq.*  To establish that a fraudulent transfer has occurred, Plaintiff must prove (1) there was a claim against Defendant by Plaintiff; (2) the Defendant did not receive relatively equivalent value in consideration of the transfer; and (3) Defendant was insolvent or likely to become insolvent. Kipperman v. Onex Corp., 411 B.R. 805, 834 (N.D. Ga. 2009) (citing O.C.G.A. §

18-2-74 and O.C.G.A. § 18-2-75).[6]  A "'[c]laim' means a right to payment, whether or not the right is reduced to judgment . . . ."  O.C.G.A. §18-2-71(3).  When a transfer is fraudulent under either section § 18-2-74 or § 18-2-75, the creditor may receive judgment in the amount transferred, to the extent that the amount satisfies the creditor's claim.  O.C.G.A. § 18-2-77.  The "judgment must be for an amount equal to the value of the asset at the time of the transfer . . . ."  O.C.G.A. § 18-2-78(c).  The "judgment may be entered against [t]he first

---

[6] O.C.G.A. § 18-2-74(a)(2) states:
> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>> . . . (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>> (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

O.C.G.A. § 18-2-75(a) states:
> "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving relatively equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation."

11

transferee of the asset . . . or [a]ny subsequent transferee other than a good faith transferee . . . ." O.C.G.A. § 18-2-78(b).

Plaintiff has satisfied the first element of a fraudulent conveyance. CSX has an enforceable judgment against Brian Leggett which has not been satisfied and upon which CSX may assert a claim for the unsatisfied judgment amount. That some of the allegedly fraudulent transfers occurred before a judgment was entered in the 2002 Case, and some occurred after, is immaterial. See DFS Secured Healthcare Receivable Trust v. Caregivers Great Lakes, Inc., 384 F.3d 338, 349 (7th Cir. 2004) ("Although [Plaintiff] did not receive a court judgment until after the asset transfer, the court judgment simply made official the obligation with respect to which [Plaintiff] had been trying to recover long before the asset transfer."); O.C.G.A. § 18-2-74(a). A judgment merely serves as evidence of a pre-existing debt, and such a debt constitutes a "claim" under the UFTA. (Id.) CSX has presented evidence which demonstrates that it has a valid claim against Brian Leggett. Plaintiff's Statement of Material Facts are, in the absence of a response by Defendant Tracy Leggett, deemed unopposed and thus admitted. LR 56.1(B)(2)(a)(2) NDGa.

The second element of CSX's fraudulent conveyance claim is satisfied because Brian Leggett did not receive relatively equivalent consideration for any of

the transfers. Brian Leggett transferred $118,759.76 in cash into his wife's LPL Accounts. Tracy Leggett was unaware of the transfers and did not provide Brian Leggett any consideration to support transfer of these funds to her. Brian Leggett also transferred the Hunnicutt Property and Macedin Property to his wife by quitclaim deed, without her knowledge and without any consideration for these properties. Finally, Brian Leggett transferred the Fieldview Properties to Tracy Leggett, using Chris Leggett as a middle man, for which Tracy Leggett did not provide any consideration. Defendants do not identify any disputes of material fact regarding this second element.

    CSX has satisfied the final element of a fraudulent conveyance claim by showing that Brian Leggett was insolvent or anticipating insolvency at the time of these transfers. A debtor is insolvent if the sum of his debts is greater than the debtor's assets. O.C.G.A. § 18-2-72. On April 25, 2005, prior to any of the alleged fraudulent transfers, Brian Leggett filed his Chapter 13 bankruptcy petition. On May 13, 2005, Brian Leggett filed a Statement of Financial Affairs with the Bankruptcy Court in which he admitted his debts substantially exceeded his assets. On August 19, 2005, the Bankruptcy Court dismissed Brian Leggett's case because he was *too* insolvent for Chapter 13 proceedings. On September 22, 2005, Brian Leggett transferred the Macedin Property to Tracy Leggett. On

October 28, 2005, a final judgment was entered against Brian Leggett in the 2002 Case, for $1,930,058.93.  That same day, Brian Leggett transferred the Fieldview Properties to Chris Leggett.  Brian Leggett began transferring the liquid assets to Tracy Leggett on January 1, 2006, and he transferred the Hunnicutt Property to Tracy Leggett on January 3, 2006.  During each transfer, Brian Leggett was aware that his debts exceeded his assets, and, throughout this period, he had openly declared his insolvency.  These facts also are undisputed.

The Court necessarily finds that Brian Leggett's transfers were fraudulent conveyances under Georgia law and under Georgia law Tracy Leggett may be held liable for these fraudulent transfers.  O.C.G.A. § 18-2-78(b) ("judgment may be entered against [t]he first transferee of the asset . . . or [a]ny subsequent transferee other than a good faith transferee . . . .").  Accordingly, Plaintiff's unopposed Motion for Summary Judgment against Tracy Leggett is granted, as follows:

- Summary Judgment is granted against Tracy Leggett as to Counts I and II of the Amended Complaint, which related to the fraudulent conveyance of the Fieldview Properties, in the amount of 86,952.64, which was the value of the asset at the time of the transfer;

- Summary Judgment is granted against Tracy Leggett as to Count III of the Amended Complaint, which related to the fraudulent conveyance of

14

the Hunnicutt Property, in the amount of $42,576, which was the value of the asset at the time of the transfer;

- Summary Judgment is granted against Tracy Leggett as to Count IV of the Amended Complaint, which related to the fraudulent conveyance of the Macedin Property in the amount of $24,500, which was the value of the asset at the time of the transfer;

- Summary Judgment is granted against Tracy Leggett as to Count XVI of the Amended Complaint, which related to the fraudulent conveyance of the liquid assets in the LPL Accounts, in the amount of $118,795.76, which was the value of the asset at the time of the transfer.

### III. CONCLUSION

For the foregoing reasons

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [102] is **GRANTED**. The Clerk is ordered to enter judgment against Defendant **TRACY LEGGETT** in the amount of $272,288.40.

It is specifically ordered that Summary Judgment is granted against Tracy Leggett as to Counts I, II, III, IV, and XVI of the Amended Complaint.

**SO ORDERED** this 12th day of August, 2010.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE